UNITED AMERICAN BOSCH CORP. *v.* UNITED STATES [1]

United States Customs Court, Second Division

(Decided June 28, 1938)

*Puckhafer & Rode* (*George J. Puckhafer* of counsel) for the plaintiff.
*Joseph R. Jackson,* Assistant Attorney General (*Joseph E. Weil,* special attorney), for the defendant.

Before TILSON, KINCHELOE, and DALLINGER, Judges

DALLINGER, Judge: These are suits against the United States, arising at the port of New York, brought to recover certain customs duties alleged to have been improperly exacted on particular importations of so-called fog lamps. Duty was levied thereon at the rate of 45 per centum ad valorem under paragraph 397 of the Tariff Act of 1930 as manufactures of metal not specially provided for, plus three-

fourths of 1 cent per pound under section 601 (c) (7) of the Revenue Act of 1932 as articles containing 4 per centum or more of copper by weight.

It is claimed that said lamps are properly dutiable at but 25 per centum ad valorem under paragraph 369 (c) of said tariff act as parts of automobiles, or, alternatively, at 35 per centum ad valorem under paragraph 353 of said act as articles suitable for producing, controlling, or distributing electrical energy, plus the copper tax above mentioned under said Revenue Act of 1932.

The plaintiff called Charles W. Bunn, the United States examiner at the port of New York who passed the importation. No witnesses were called by the Government.

The witness Bunn testified that he had examined and advisorily classified the lamps in question, which he described as follows:

A fog lamp is a small lamp about one-third the size of an ordinary headlight of an automobile. It is placed down below the bumper in front of the automobile to throw the light just ahead of the wheels on the road, immediately in front of the automobile. In a heavy fog, where the headlights will not penetrate, the headlights throw the light so far ahead it doesn't help driving as the fog lamp does.

Asked to describe the physical appearance of these fog lamps and the manner in which they are attached to an automobile, the witness said:

They are regular headlights of miniature size, about one-third of the size, with the difference they have a peculiar painted lens—I am not familiar with the properties of that lens—that makes them particularly available in fog. They are painted possibly four or five different kinds, and these lenses are supposed to reflect the light through fog where the ordinary lens used will not. Usually they are attached to the automobile on brackets the same as any side light, and they are operated by electric power furnished by the car.

At the close of the testimony on direct examination the following colloquy between counsel occurred:

Mr. WEIL. Are you pressing your claim as parts of automobiles?
Mr. PUCKHAFER. Not in this proceeding, no.

On cross-examination the witness testified that he had seen such fog lamps on a good many cars but that they were not part of the regular equipment of an automobile; that in their imported condition they are simply electric lamps ready to be fitted with bulbs; that these particular lamps had therein no tubing or wiring; that in their imported condition they required only to be wired and attached to the brackets on the automobiles; that automobiles are not ordinarily equipped with cable and wiring for such lamps; and that such a lamp is an accessory.

Upon this record counsel for the plaintiff contend in their brief that these lamps are parts of automobiles within the meaning of said para-

graph 369 (c), and cite the decision of the appellate court in *United States* v. *Bosch Magneto Co.*, 13 Ct. Cust. Appls. 569, T. D. 41434.

It is true that in that case the appellate court said:

> We think lamps and horns are essential and necessary parts of automobiles and that automobiles cannot be efficiently, safely, or properly operated without them. * * * To operate an automobile without lights would certainly limit it to day operations, and the use of a horn or some other sounding device is usually so essential to the safety of the operator of the car and to the public in general as to make its use almost indispensable.

But this does not mean that an automobile must be held to be incomplete when equipped only with the lighting system and the horn or sound device installed therein by the manufacturer as parts of the regular automobile equipment.

In *S. H. Kress & Co. et al.* v. *United States*, T. D. 47369, 66 Treas. Dec. 605, we had before us the question as to whether certain rubber bulb horns installed by certain automobile owners in their cars to supplement the manufacturer's sounding device already in the cars were parts of automobiles in the tariff sense. In holding that they were not so classifiable, and after quoting from the case of *United States* v. *Bosch Magneto Co., supra,* we said:

> True, the use of a "horn or some other sounding device" may be so essential to safety as to make it a part of an automobile. But is the same true of one or more additional horns or sounding devices? We think not, especially in view of the comparatively recent decision of the same tribunal in *United States* v. *Willoughby Camera Stores, Inc.*, 21 C. C. P. A. 322, T. D. 46851. Defining what constitutes a "part" of an article in the tariff sense, the court said:

>> It is a well-established rule that a "part" of an article is something necessary to the completion of that article. It is an integral, constituent, or component part, without which the article to which it is to be joined, could not *function as such article. Welte & Sons* v. *United States*, 5 Ct. Cust. Appls. 164, T. D. 34249; *United States* v. *American Steel & Copper Plate Co.*, 14 Ct. Cust. Appls. 139, T. D. 41673; *Peter J. Schweitzer, Inc.* v. *United States*, 16 Ct. Cust. Appls. 285, T. D. 42872, and cases cited therein; *United States* v. *John Wanamaker*, 16 Ct. Cust. Appls. 548, T. D. 43266.

> May it seriously be urged that an automobile already equipped with a horn or other sounding device nevertheless requires one of these bulb horns to complete its equipment in that respect? Such a horn may well be a convenient or desirable accessory, but that would not make the horn a "part" of an automobile in the tariff sense. As stressed by the court in the *Willoughby* case:

>> The mere fact that two articles are designed and constructed to be used together does not necessarily make either a part of the other. *Columbia Shipping Co. et al.* v. *United States*, 11 Ct. Cust. Appls. 281, T. D. 39085; *United States* v. *Kalter Mercantile Co. et al.*, 11 Ct. Cust. Appls. 540, T. D. 39680.

> Inasmuch as we are satisfied that an automobile which has been equipped by its manufacturer with a horn or sounding device does not require one of these rubber-bulb horns to complete its integrity in that respect, we must hold that the imported horns are not classifiable as parts of automobiles, as alleged by the plaintiffs. All claims are therefore overruled and the decision of the collector in each instance is affirmed. Judgment will be rendered accordingly.

Applying that doctrine to the instant case we are of the opinion that the so-called fog lamps involved herein are not parts of automobiles within the meaning of said paragraph 369 (c), as claimed by the plaintiff.

There remains to be considered the plaintiff's alternative claim that said lamps are properly dutiable at the rate of 35 per centum ad valorem under the provision in said paragraph 353 for "articles suitable for producing * * * controlling, or distributing electrical energy." As to the applicability of that provision to the imported lamps we believe the decision of the appellate court in *A. N. Khouri & Bro.* v. *United States*, 22 C. C. P. A. 28, T. D. 47037, is controlling. That case involved the question of the tariff classification of certain floor and base lamps of various shapes and sizes, in chief value of metal, usable, after being wired and equipped with switches, sockets, and bulbs, for electric lighting. In affirming the decision of this court in *A. N. Khouri & Bro.* v. *United States*, Abstract 24294, 63 Treas. Dec. 1564, in which we held that the lamps were not within the purview of said paragraph 353, the appellate court said:

Paragraph 353 of the 1930 act is new to tariff legislation. Its legislative history, as set forth in the brief on behalf of the Government, indicates, we think, that Congress was seeking largely to provide a particular classification for certain types of electrical devices, some of which had been theretofore classified as machines, and others as manufactures of metal, or articles in chief value of metal, and possibly some under still other provisions.

We do not find in it, however; any language which seems to us to show a legislative intent of bringing lamp bases, or unfinished lamps, under said paragraph as "parts" of any of the numerous things for which provision is there made. We do not understand that there is any claim here that lamps, or lamp bases, are *ejusdem generis* with any of the articles *eo nomine* mentioned in said paragraph 353. The argument is rather to the effect that since the paragraph provides for "electrical * * * wiring * * * apparatus, instruments * * * and devices; * * * and parts thereof, finished or unfinished * * *," and since it is essential to wire lamps of the kind here at issue in order to furnish light, the language is broad enough to include them. The suggestion is that the wire, with other appurtenances, is suitable for distributing electrical energy and does distribute it.

In the sense that the electric current passes by means of a wire there is a distribution in a broad sense, but as used in said paragraph 353, we think "articles suitable for * * * distributing electrical energy" obviously must be given the technical meaning appertaining to the art, and that means through or over which electrical current merely passes were not intended to be included therein. Electrical distributors have a well-understood meaning in the art. Webster's New International Dictionary gives as one definition of distributor:

An apparatus for distributing an electric current, either to various points in rotation, as in some motors, or along two or more lines in parallel, as in a distributing system.

We do not regard the lamps or lamp bases here at issue as being the type of electrical apparatus, instrument, or device intended to be covered by the paragraph.

Inasmuch as the lamps involved herein were not wired as imported, they were in the same category as those before the appellate court in the cited case.

Upon all the facts and the law applicable thereto we hold that the present so-called fog lamps are properly dutiable at the rate of 45 per centum ad valorem under paragraph 397 of the Tariff Act of 1930 as manufactures of metal not specially provided for, as classified by the collector. All claims of the plaintiff are therefore overruled and the decision of the collector is affirmed. Judgment will be rendered accordingly.