BEFORE THE FIRST DIVISION, OCTOBER 21, 1954

**No. 58428.**—Cody Manufacturing Co., Inc., and Rohner Gehrig & Co., Inc. *v.* United States, protest 221782–K (New York).

OLIVER, Chief Judge: This protest relates to merchandise described on the invoices as dolls for musical movements. The collector assessed duty thereon at the rate of 45 per centum ad valorem under the provision for dolls in paragraph 1513 of the Tariff Act of 1930, as modified by T. D. 51802, supplemented by T. D. 51898. Plaintiffs claim that the merchandise is properly dutiable at only 20 per centum ad valorem under the provision in paragraph 1541 (a) of the Tariff Act of 1930, as modified by the trade agreement with Switzerland, T. D. 48093, for "Music boxes and parts thereof, not specially provided for."

All of the evidence before us was offered by the secretary of the importing corporation, the Cody Manufacturing Co., Inc., whose business was described by the witness as "Manufacturing of music boxes." The witness identified a sample of the imported merchandise (plaintiffs' exhibit 1). An examination thereof shows that the merchandise in question is a miniature female figure, 2 inches high, composed of a plastic material. The upper body, consisting of the head, arms, and torso, is molded as one part of the figure. The legs, which are made separately, are suspended by wire loops so as to hang loosely from the torso. The figure is garbed in what is apparently intended to simulate a ballet skirt that is gathered at the waist. Around the waist, there is wound a gilt thread, giving the appearance of a sash. The facial features and the hair are painted on the plastic figure. Extending downward from the bottom of the

torso, and permanently affixed thereto, is a pointed metal shaft, 2¾ inches long, that dedicates the article for use with a music box (plaintiffs' illustrative exhibit 2). This music box consists of a round metal shell, with a wooden base and wooden legs, that serves as the housing for the musical movement, which is fastened to the wooden base with screws. Extending upward, through the center of the shell, is a hollow metal tube or sleeve, into which is fitted the metal shaft affixed to the figure, as hereinabove described. A blocking screw, attached to the metal shaft, locks the figure to a small metal platform that is secured to a special gear fitted to the musical movement. The musical movement, *per se*, consists of a metal cylinder with minute pegs projecting from the surface. When the music box is in operation, small metal teeth strike the pegs as the cylinder revolves, thereby reproducing musical tones. The music box is put in operation by winding at the bottom just "like you would an ordinary watch or clock." When the movement is wound and released, musical sounds or melodies are emitted, and the metal platform vibrates. The vibration causes the metal shaft to move up and down, and whirl around, giving the effect of a dancing figure. The figure is enclosed in a hollow plastic cover, which fits tightly around the upper level of the top of the metal shell that houses the musical movement.

The witness further testified that the metal housing, as well as the musical movement, the hollow metal sleeve, and the blocking screw, are also imported parts; that an equal number of each is ordered "at all times"; and that, after the various components are received, they are assembled to form the music box with the plastic figure (illustrative exhibit 2, *supra*). On cross-examination, the witness admitted that the miniature figure has nothing to do with the musical sounds that are emitted.

It should be borne in mind that the shipments in question contained only the merchandise which the collector classified as a doll. Hence, our consideration herein must be confined to that particular item.

Plaintiffs' case, as stated in counsel's brief, is based on the premise that "the merchandise at bar is only imported to be incorporated into musical boxes and has no other uses," so, therefore, it should be classified as parts of music boxes under said amended paragraph 1541 (a).

The term, "music box," as defined by leading dictionary authorities, is a case or a cabinet, housing a mechanism that plays tunes or melodies automatically. Specifically, Webster's New International Dictionary defines "music box" as "a box or case containing apparatus moved by clockwork so as to play certain tunes automatically." Funk & Wagnalls New Standard Dictionary embodies the definition of "music box" under the word "musical," wherein "m. box" is defined as "a case or cabinet containing a mechanism contrived to reproduce melodies, and frequently possessing additional musical effects. The notes are produced by the vibrations of steel teeth struck by minute pegs projecting from the surface of a revolving cylinder."

Under the foregoing definitions, the article in question is not a part of a music box, within the judicial interpretation of the word "part," as set forth in the case of *United States* v. *Willoughby Camera Stores, Inc.*, 21 C. C. P. A. (Customs) 322, T. D. 46851, as follows:

It is a well-established rule that a "part" of an article is something necessary to the completion of that article. It is an integral, constituent, or component part, without which the article to which it is to be joined, could not *function as such article*. [Italics quoted.] ¦*Welte & Sons* v. *United States*, 5 Ct. Cust. Appls. 164, T. D. 34249; *United States* v. *American Steel & Copper Plate Co.*, 14 Ct. Cust. Appls. 139, T. D. 41673; *Peter J. Schweitzer, Inc.* v. *United States*, 16 Ct. Cust. Appls. 285, T. D. 42872, and cases cited therein; *United States* v. *John Wanamaker*, 16 Ct. Cust. Appls. 548, T. D. 43266.

The mere fact that two articles are designed and constructed to be used together, does not necessarily make either a part of the other. *Columbia Shipping Co. et al.* v. *United States,* 11 Ct. Cust. Appls. 281, T. D. 39085; *United States* v. *Kalter Mercantile Co. et al.,* 11 Ct. Cust. Appls. 540, T. D. 39680.

While the article in question is designed and constructed for use, and is exclusively used, with a music box, the present merchandise is not an integral, constituent, or component part, without which the music box could not function. The basic element of a music box is the mechanism contrived to produce musical sounds or melodies. Plaintiffs' witness admitted that the merchandise in question does not in any way cause or control the musical tones reproduced by the music box with which it is connected.

Counsel for defendant, in his brief, cites cases where the merchandise involved included a music box mechanism. *Thorens, Inc.* v. *United States,* 31 C. C. P. A. (Customs) 125, C. A. D. 261; *Lador, Inc.* v. *United States,* 4 Cust. Ct. 123, C. D. 304. In the *Thorens, Inc.,* case, *supra,* the commodity consisted of a toilet paper distributor or roll holder, equipped with a music box mechanism that played a tune when the roll was operated. The *Lador, Inc.,* case, *supra,* related to merchandise consisting of a music box, on the top of which was a metal holder equipped with a set of three thumbscrews for holding a small Christmas tree. In each of the said cases, the court found that the particular commodity under consideration, with its combined features, was something more than a music box, and, therefore, in both instances, the merchandise was excluded from classification under the provision for music boxes and parts thereof in said modified paragraph 1541 (a). The significance herein of the two cited cases lies in the recognition that the use—even an exclusive use—of a music box in conjunction with an article of commerce does not *ipso facto* establish for such a completed product a classification as a music box.

It is a fair conclusion, based on the record before us, that the article of commerce, of which the merchandise in question is an integral part, consists of a music box, in combination with a miniature plastic figure (exhibit 2, *supra*). The entity is certainly something more than a music box. It may be aptly described as a musical novelty, designed to create the effect of a ballet dancer, while musical tones are automatically reproduced, and made up of two separate and distinct articles, i. e., a music box and a miniature plastic figure, each performing its individual function.

Counsel for plaintiffs argues, in his brief, that the merchandise in question does not respond to the tariff classification of "dolls" in that "it could not be used by children as a toy because of the spindle or spike which extends down from the body of the figure," and also because "the very presence of this spike or spindle makes the Exhibit 1 something more than a doll even if the remaining part of the exhibit were to fall within the tariff definition of doll."

The contentions are without merit. First of all, the tariff provision for dolls, unlike the one for toys, is not limited to merchandise chiefly used for the amusement of children. As stated by the Court of Customs and Patent Appeals in the case of *S. E. Laszlo* v. *United States,* 27 C. C. P. A. 152 (Customs), C. A. D. 76, "paragraph 1513 of the Tariff Act of 1930 differs greatly from previous provisions in other tariff acts with relation to dolls, and it would seem that under said paragraph all dolls, whether toys or not, are included therein." In our decision in the case of *Barum Co., Inc.* v. *United States,* 30 Cust. Ct. 414, Abstract 57251, we held that "the *eo nomine* provision for 'dolls' in paragraph 1513 is generic in scope, as it embraces all sorts of dolls including those that are toys." The substance of dictionary definitions, in the light of the foregoing judicial pronouncements, is that a "doll" is a puppet, representing a person, for use either in play or as an ornament. Webster's New International Dictionary and Funk & Wagnalls New Standard Dictionary.

The miniature plastic figure in question is a doll, within the cited legal and dictionary authorities. In appearance and in use, it is representative of a ballet dancer. The metal shaft, affixed thereto, is an appurtenance that dedicates the article to its exclusive use as a particular kind of a doll, i. e., a dancing doll, with a music box.

Our conclusion that the merchandise in question is a doll gives complete support to the classification adopted by the collector, for even if it were held that the article under consideration is a part of a music box—which, of course, we do not hold for reasons hereinabove set forth—the present merchandise would not be classifiable under paragraph 1541 (a) as amended, *supra*, because the provision therein for parts of music boxes is limited to only those parts that are "not specially provided for." The merchandise in question falls within the broad provision for "dolls" in paragraph 1513, as amended, *supra*, as classified by the collector.

On the basis of the present record, and for all of the reasons stated herein, the protest is overruled, and the action of the collector is affirmed. Judgment will be rendered accordingly.